633 A.2d 240

**ADAMS OUTDOOR ADVERTISING, LTD., a Limited Partnership, having as its General Partners, Adams Outdoor Advertising Inc., and Stephen Adams, Appellants**

v.

**HANOVER TOWNSHIP ZONING HEARING BOARD and Hanover Township Board of Supervisors.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided Oct. 28, 1993.

Victor F. Cavacini, for appellants.

Theodore R. Lewis, for appellee, Hanover Township Zoning Hearing Bd.

David W. Halwick for intervenor, Hanover Township Bd. of Supervisors.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Adams Outdoor Advertising, Ltd. (Adams) appeals from the order of the Court of Common Pleas of Northampton County that sustained the action of the Hanover Township Zoning Hearing Board (ZHB). The ZHB dismissed Adams' constitutional challenge to the Hanover Township Zoning Ordinance

(Ordinance) and denied Adams a variance for the construction of an outdoor off-premise advertising sign.

Adams is in the business of erecting outdoor advertising signs. Adams leases property at the intersection of Routes 22 and 512 in the Township. On a portion of the leased premises, Adams had two 25 × 12–foot billboards, classified as non-conforming uses. Adams' billboards were condemned as part of an extensive improvement program for the highway intersection. Willing to waive any condemnation benefits, Adams requested zoning relief to construct a double-decker outdoor advertising sign having four advertising surfaces, one on top of the other, back-to-back on a non-condemned portion of its leased property.[1]

The zoning officer refused to issue a permit and Adams appealed to the ZHB. The appeal sought zoning relief, making a constitutional validity challenge to the Ordinance because the Ordinance did not allow outdoor off-site advertising signs, and/or in the alternative, requesting a variance. The ZHB afforded no relief and Adams appealed to the trial court.

The trial court found that the Ordinance did not *de jure* exclude advertising signs because signs are "permitted in commercial zones as accessory uses," citing Section 612.3 of the Ordinance. The trial court reasoned because Section 224 of the Ordinance defines accessory uses, and because temporary and permanent signs are listed as accessory uses, that Adams' proposed sign would be a permissible accessory use, if it met the other requirements of the Ordinance, which it found the proposed sign did not. The trial court also found that the Ordinance did not *de facto* exclude Adams' proposed sign even though the size permitted by the Ordinance was much smaller than that proposed by Adams. Further, the trial court found that the ZHB did not abuse its discretion in denying Adams' request for a variance because Adams failed to show that the

---

1. Each of the advertising surfaces would have an area of 12 × 25 feet for a total of 300 square feet. The proposed structure would be erected on a unipole, illuminated from dusk until midnight using a single 400 watt halophane light for each face. The signs would disseminate both commercial and non-commercial messages and represent the standard sizes for poster panels in the outdoor advertising industry.

Ordinance's height and size requirements were unreasonable and caused a unique and undue hardship. Finally, the trial court dismissed Adams' argument that the ZHB failed to comply with the written decision requirements of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

Adams makes three arguments on appeal:[2] 1) that the trial court erred in holding that the Ordinance neither *de jure* nor *de facto* excludes off-premises advertising signs; 2) that the trial court erred in refusing to grant Adams a variance; and 3) that the trial court abused its discretion in finding that the ZHB followed the procedural requirements of the MPC.

Before a reviewing tribunal may declare a zoning ordinance unconstitutional, the challenging party must clearly establish that the provisions of the ordinance are arbitrary and unreasonable. *Bilbar Construction Co. v. Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958). A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court. *Worcester Township Appeal,* 101 Pa.Commonwealth Ct. 327, 516 A.2d 420 (1986). Although the Ordinance here is replete with references to "advertising signs," we hold that there is a *de jure* exclusion of this type of signs for the reasons that follow.

In the definitional section of the Ordinance the following definitions concern signs.

*Sign:* Any letter, word, model, picture or device intended as an announcement, direction, advertisement, or intended to convey information or attract attention.

281.1  A sign includes those in window display areas, sign frames, billboards, sign boards, painted wall signs, hanging

---

**2.**  In a zoning appeal where the trial court has taken no additional evidence, our scope of review is limited to determining whether the ZHB committed a manifest abuse of discretion or an error of law. *Hersh v. Zoning Hearing Board of Marlborough,* 90 Pa. Commonwealth Ct. 15, 493 A.2d 807 (1985).

signs, flashing signs, illuminated signs, pennants, fluttering and rotating devices, string of lights and similar devices.

\*    \*    \*    \*    \*    \*

*Signs: Advertising, Business, Temporary:*

282.1   *Sign, Advertising:* A sign offering goods or services produced or available somewhere other than the lot on which the sign is located.

282.2   *Sign, Business:* A sign offering goods or services available on the lot on which the sign is located.

282.3   *Sign, Temporary:* A business sign offering premises for sale, rent, or development, or a business sign advertising the services of a building trade, contractor and similar occupations during alterations, construction or development of a building or lot.

The sign that Adams proposes falls under Section 282.1 entitled *"Sign, Advertising:* a sign offering goods or services produced or available somewhere other than the lot on which the sign is located."

The Ordinance also sets forth sign regulations beginning at Section 360:

360   SIGN REGULATIONS

361   In all Districts, signs shall be permitted only if they are in accordance with the regulations contained in Section 360.

361.1   A sign permit shall be required prior to the erection or alteration of any sign in Hanover Township.

362   *General Regulations:*

362.1   No sign shall be erected within the lines of an existing or proposed street right-of-way, except traffic signs and similar regulatory notices of a duly constituted governmental body.

362.2   No moving, fluttering, or flashing sign shall be permitted.

362.3   No artificial light or reflecting device shall be used as a sign or part of a sign where such light or device

interferes with, competes for attention with, or may be mistaken for a traffic signal.

362.4   Other Requirements:

362.41   Relationship to Street Intersection.   No sign shall be erected, attached, or displayed within seventy-five (75) feet of the point of intersection of the right-of-way lines at a street corner.

362.42   Any free standing sign shall not be greater than 30 sq. ft. in area, except as defined in Section 364.34 [3] and 364.44. [4]

362.43   The top of any free standing sign shall not be higher than 14 feet above the adjacent official Township street grade.

362.44   Signs on parked vehicles which are not incidental to their use as vehicles, are prohibited.

362.45   Signs mounted on a building shall be mounted parallel to the supporting wall and should project not more than ten (10) inches from the building.

362.5   The permitted area of a sign does not include framing members less than six (6) inches wide surrounding the advertisement, unless the frame itself is used for advertising purposes.   Any framing members six (6) inches or wider shall be included as part of the permitted sign area.

Sections 362.42 and 362.43 limit the size of the sign to thirty (30) square feet in area and not higher than fourteen (14) feet

3.   364.34   A Planned Industrial/Business Park, a Planned office, Research and Residential or an Office Institutional Area developed according to a Unified Site Plan shall be permitted only one identification sign at each major entrance not to exceed 50 square feet in area, with the exception that two (2) such identification signs, each of a maximum dimension of fifty (50 Sq. Ft.) square feet may be permitted at each major entrance if the tops of both signs are no more than six (6) feet above the adjacent official street grade and constructed of natural materials, and if the Site Plan and Detailed Design of such signs are reviewed by the Planning Commission and approved by the Board of Supervisors during Site Plan review as required by Section 393.

4.   364.44   A Commercial Center shall be permitted only one (1) identification sign not to exceeded fifty (50) square feet in area.

above street grade. The proposed sign does not meet these requirements.

As previously mentioned, the Ordinance appears to allow off-premise free-standing signs of limited size. Adams' leased premise is located in a C–2 commercial district. Advertising signs are not a listed, permitted use, but signs are listed, generally, as accessory uses:

612 *Accessory Uses:*

Only the following accessory building types and uses shall be permitted in this district, except non-conforming uses or buildings are provided for in Section X:

612.1 Parking garage or area, and loading area pursuant to Sections a315.3e, 340, 350 and 605.1.

612.2 Customary accessory uses in Service, Commercial Areas.

612.3 *Signs,* pursuant to Section 360.

(Emphasis added). Therefore, it appears that signs are permitted as an "accessory use" in the C–2 district. Adams, however, argues that an off-premise advertising sign cannot be an accessory use as the trial court found. We agree.

■ The trial court, in a footnote compared two provisions of the Ordinance to reach its holding that an advertising sign was a permitted accessory use. These two provisions state:

223 *Accessory Building:*

223.1 A subordinate building, the use of which is customarily incidental to that of the principal building and is used for an accessory use, and

223.2 Located on the same lot.

224 *Accessory Use of Accessory:*

224.1 A use conducted on the same lot as a principal use to which it is related and located either within the same structure or in an accessory structure or as an accessory use of land.

224.2 Clearly incidental to, and customarily found in connection with a particular principal use.

224.3   Either in the same ownership as such principal use or operated and maintained on the same lot for the express benefit of the owner, occupants, employees, customers or visitors.

224.4   One of, but not limited to, the following uses:

\*        \*        \*        \*        \*        \*

224.47   Temporary and permanent signs.

The trial court's footnote stated:

Comparing the definitions of accessory buildings, § 223 (which contains the adjunctive 'and' between its subsections) and of accessory *uses,* § 224 (which does not contain the adjunctive between subsections) we conclude that it is not necessary for an accessory use to satisfy all subsections of the definition.   As a result, it is not necessary for a permanent sign to *also* be clearly incidental and customary to the principal use.   Thus, a permanent sign is an accessory use without further proof.   However, regarding these alternative requirements, we note that there are four other billboards within one-half mile of the proposed sign, N.T. at 22, including another billboard at the eastern edge of the same motel property.   Exhibit S–1, 5/23/91.

Trial court opinion at 3, n. 1 (emphasis in original).   We do not agree with the trial court's interpretation of the accessory use provision, i.e., Section 224 of the Ordinance, because such a reading does not lend to a plain and correct interpretation to the Ordinance.   While Section 223 contains the conjunction "and" and Section 224 does not, Section 224 is meaningless unless its subsections are read as a whole.   The Ordinance's description of accessory uses obviously concern a use, clearly incidental to and customarily found in connection with the particular principal use.   These accessory uses are described as follows:

224.41   Residential accommodations for caretakers of institutions are large commercial or industrial uses.

224.42   Keeping of domestic animals, such as dogs, cats, or other household pets, and in districts where agriculture is permitted, usual farm animals.

224.43 Domestic or agriculture storage customarily found in a barn, shed, tool room or similar structure.

224.44 In connection with commercial or industrial uses, the storage of goods normally carried in stock, used in, or produced by such uses, unless such storage is expressly prohibited under the applicable district regulations. The floor area used for such accessory storage shall be included in the maximum floor area permitted for the specified use.

224.45 The removal of loam, clay, sand, gravel or stone in connection with the construction of a building or other structure on the same lot, for sale or other purposes. This use shall be limited to the removal of such excavated material above an elevation set one (1) foot above the official Township street grade.

224.46 Accessory off-street parking spaces, open or enclosed, and accessory off-street loading berths.

224.47 Temporary and permanent signs.

224.48 Home occupation.

In interpreting a zoning ordinance, a particular section of a zoning code or subdivision code must be read as an integral part of the whole, and not as a separate portion with independent meaning. *Tobin v. Radnor Township Board of Commissioners*, 142 Pa.Commonwealth Ct. 567, 597 A.2d 1258 (1991). After extensive research, we have found no cases in which an "off-site" sign has been found to be an accessory use. An accessory use has been defined by courts as a *use conducted on the same lot as a principal use to which it is related and located either within the same structures or in an accessory structure or as an accessory use of the land.* Therefore, we hold that the trial court's interpretation of Section 224 of the Ordinance was incorrect in that an accessory use must be a use conducted on the same lot as a principal to use to which it is related and located and clearly incidental to and customarily found in connection with the particular principal use in order to give Section 224 its proper meaning. Further, no zoning district, described in the ordinance, allows off-site advertising signs except as accessory uses. Because we hold that an

advertising sign cannot be an accessory use, the Ordinance is *de jure* exclusionary.

Once a challenger proves a total prohibition of a legitimate use, the burden shifts to the municipality to establish that the prohibition promotes health, safety, morals and general welfare. *Beaver Gasoline Co. v. Zoning Hearing Board*, 445 Pa. 571, 285 A.2d 501 (1971). Moreover, the constitutionality of a zoning ordinance which totally excludes a legitimate use must be highly scrutinized and, thus, such ordinance must bear a *more* substantial relationship to a stated public purpose than a regulation which merely contains a use to a certain zoning district. *Re: Appeal of Elocin, Inc.*, 501 Pa. 348, 461 A.2d 771 (1983). The Township introduced no evidence that the proposed sign would be injurious to the health, safety and welfare of its citizens. Because the Township did not meet its shifting burden that the *de jure* exclusion was detrimental to its citizens, we reverse on this issue.

We must next consider what relief is due Adams in the face of this successful challenge to the Ordinance. The landmark decision concerning the remedy for an invalid zoning ordinance is the Supreme Court's decision in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974). *Casey* requires that a successful challenger to a zoning ordinance be granted the relief requested unless the government unit proves that the proposed use will be injurious to the public health, safety, and welfare. *Casey* considered:

> [W]hether a court has the power to grant an applicant-challenger definitive relief upon rendering a zoning ordinance constitutionally infirm. . . . 'Obviously, if judicial relief of local zoning action is to result in anything more than a farce, the courts must be prepared to go beyond mere invalidation and grant definitive relief.' To forsake a challenger's reasonable development plan after all the time, effort and capital invested in such a challenge is grossly inequitable. . . .

*Id.* at 230, 328 A.2d at 469 (citation omitted). Further, a township may not retroactively enact a zoning provision which

cures the constitutional infirmity in order to avoid a court's order to allow the challenger's proposed use. In *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985), landowners successfully challenged the township's zoning ordinance as *de jure* exclusionary of multi-family dwellings. The Court remanded with instructions to approve the landowners' request unless the township could show that the plan was incompatible with the site or reasonable, pre-existing health and safety codes and regulations relating to land, structures, or other emplacement on land existed. Again the Court reflected on *Casey,* reasoning that:

> [A]n applicant, successful in having a zoning ordinance declared unconstitutional, should not be frustrated in his quest for relief by a retributory township.

*Fernley,* 509 Pa. at 420, 502 A.2d at 589 (quoting *Casey,* 459 Pa. at 229, 328 A.2d at 469). While approval of a challenger's plan is not automatic but must be predicated on the suitability of the proposed site and various health and safety considerations, *L. Ellick v. Board of Supervisors,* 17 Pa. Commonwealth Ct. 404, 333 A.2d at 239 (1975), the *Fernley* Court specifically held that a zoning provision adopted by a municipality which cures the constitutional infirmity but which was not considered prior to the filing of the challenge to the zoning ordinance, may not be given effect for purposes of fashioning the appropriate relief to be awarded to the successful challenger. Thus, if a governing body determines that its ordinance is defective, because it totally prohibits the use proposed by the challenging landowner, then the governing body must permit the challenging landowner to develop his land as proposed in the plans submitted with the challenge, provided, of course, that what is submitted is reasonable, and not injurious to the public health, safety and welfare and morals. To hold otherwise,

> [W]ould effectively grant the municipality a power to prevent any challenger from obtaining meaningful relief after a successful attack on a zoning ordinance. The municipality could penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional

infirmity, but also designed to zone around the challenger. Faced with such an obstacle to relief, few would undertake the time and expense necessary to have a zoning ordinance declared unconstitutional.

*Casey,* 459 Pa. 219 at 228, 328 A.2d at 468. Therefore, we hold that *Casey* governs the instant litigation and mandates that appellants be permitted to develop their property as proposed, regardless of how that land is currently zoned because the Township produced no evidence that would show that the proposed sign would be injurious to the public health, safety and welfare of its citizens.[5]

Accordingly, we reverse the order of the trial court that affirmed the ZHB's dismissal of Adams' constitutional challenge to the Township's Ordinance and remand the case to the ZHB for the issuance of a permit to construct the sign as proposed by Adams.

## ORDER

AND NOW, this 28th day of October, 1993, the order of the Court of Common Pleas of Northampton County is reversed and the case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**5.** Adams also argued that the Ordinance was a *de facto* exclusion of outdoor advertising signs because of the size regulations set forth in Sections 362.42 and 362.43. Because of our determination that the Ordinance is *de jure* exclusionary, we need not reach this issue nor Adams' other arguments.