**ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP, a limited partnership organized under the laws of the State of Minnesota by its managing general partner, Adams Outdoor Advertising, Inc. and Sunny South, Inc., Appellants,**

v.

**BOROUGH OF MT. POCONO ZONING HEARING BOARD and Borough of Mt. Pocono.**

Adams Outdoor Advertising Limited Partnership, a limited partnership organized under the laws of the State of Minnesota, by its managing general partner, Adams Outdoor Advertising, Inc. and Pocono Star Properties, Inc., Appellants,

v.

**Borough of Mt. Pocono Zoning Hearing Board and Borough of Mt. Pocono.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2002.
Decided July 24, 2002.

---

Victor F. Cavacini, Allentown, for appellants.

Robert M. Maskrey, Stroudsburg, for appellees.

Before PELLEGRINI, Judge, LEAVITT, Judge, and DOYLE, Senior Judge.

OPINION BY Senior Judge DOYLE.

This case is the consolidation of two appeals by Adams Outdoor Advertising (Adams), together with Sunny South, Inc. and Pocono Star Properties, Inc., respectively, from two orders of the Court of Common Pleas of Monroe County that denied and dismissed their appeals from orders of the Zoning Hearing Board of the Borough of Mt. Pocono (Board) in which a provision of the Borough of Mt. Pocono's (Borough) zoning ordinance was held constitutionally invalid but "site-specific" zoning relief was denied. After a careful review of the record, we affirm the orders of the Court of Common Pleas.

The facts underlying the present appeals involve proposals by Adams to replace existing advertising sign structures with new ones on property located in the Borough. In the first proposal, Adams and Sunny South sought to remove two advertising signs, each having 300 square feet of sign face, and replace them with one double-faced sign, having a sign face of 247.5 square feet on each side. In the second proposal, Adams and Pocono Star sought to remove two other signs, along with six double-faced sign structures, having sign faces of 96 square feet on each side, and replace them with five double-faced signs having sign faces of 247.5 square feet on each side.

The use of signs in the Borough is generally governed by Article IX of the Borough of Mt. Pocono Zoning Ordinance, which classifies signs into one of four categories:

A. *Information.* All directional, street, traffic, street address, and signs of a similar nature.

B. *Personal.* Name plates, home occupation, and signs of a similar nature.

C. *Temporary.* Sale, lease, or rent; political; special event (including directional); construction; and signs of a similar nature.

D. *Advertising.* Commercial, industrial, or institutional signs, the purpose of which is to sell or index a product, service, or activity.

MOUNT POCONO BOROUGH, PA, ZONING ORDINANCE, art. IX, § 9.4 (1994). Advertising signs that are "off-site," like the ones proposed by Adams, are specifically governed by Section 9.8(C) of Article IX, which provides as follows:

*Off–Site.* Permitted in C–1, C–2, and M Districts, subject to the following:

1. Maximum sign area is fifty (50) square feet.

2. No portion of the sign shall be less than six (6) feet nor more than sixteen (16) feet above grade level.

3. Minimum distance between any advertising signs (on-site and off-site) is two hundred (200) feet.

4. Minimum distance from any residential structure is fifty (50) feet.

5. Minimum distance from any public street intersection is one hundred (100) feet.

Zoning Ordinance § 9.8(C). The signs that Adams wishes to replace existed prior to the enactment of Article IX and were permitted nonconforming signs.[1] The new signs that Adams proposes to construct would also fail to conform with the Ordinance. As such, when Adams applied for zoning permits to construct the proposed sign structures, the Borough Zoning Officer denied the applications.

Adams appealed the Zoning Officer's denials to the Board and also applied, in each instance, for a special exception to continue a permitted nonconforming use, or, in the alternative, for a variance from the advertising sign dimensional requirements. In addition, Adams filed validity challenges to Article IX of the Ordinance generally and to Sections 9.7(B)[2] and 9.8(C) specifically, contending that the Ordinance unlawfully restricted political speech. The appeals were consolidated for the sake of hearing.

Following hearings on July 11, 2000, and August 29, 2000, the Board issued two opinions, with essentially identical reasoning, and agreed with Adams that the Ordinance was defective.[3] The Board determined that the Ordinance unduly restricted free speech by confining political messages to temporary signs, and, consequently, pursuant to Section 916.1 of the Pennsylvania Municipalities Planning

---

1. Section 9.13 of the Ordinance, pertaining to nonconforming signs, provides, *inter alia*, as follows:

    A. *Continuance.* Any sign legally existing at the date of passage of this Ordinance that does not conform in use, location, height, size, or sign area with the provisions of this Ordinance is a non-conforming sign. It may continue in its present use and location until replacement or rebuilding becomes necessary, at which time, or if it is removed, the sign must be brought into conformity with this Ordinance.

    Zoning Ordinance § 9.13(A).

2. Section 9.7(B) of the Ordinance pertains to temporary signs announcing a political message.

3. In both opinions, the Board did not evaluate Adams' requests for a special exception or variance, concluding that, at the close of the August 29, 2000, hearing, Adams conceded that there was an insufficient basis to grant such relief. Adams does not raise any issue before us with regard to its applications for a dimensional variance or special exception for the enlargement or change of a nonconforming use.

Code (MPC),[4] 53 P.S. § 10916.1, the Board recommended the following amendment to Section 9.4(D) of the Ordinance:

> D. *Advertising. Commercial, industrial, [or] institutional or political signs, the purpose of which is (1) to sell or index a product, service or activity, or (2) to promote ideas of public or political interest, or (3) to promote political causes or candidacies.*

(Board's Opinions at 3) (emphasis added; Board's additions underlined and deletions in brackets). The Board, however, did not extend the success of Adams' validity challenge to include the granting of "site-spe-

cific" zoning relief from the dimensional requirements of Section 9.8(C) of the Ordinance. Thus, Adams appealed to Common Pleas Court, which affirmed the orders of the Board and denied and dismissed Adams' appeals. The present appeals to this Court followed and were consolidated.[5]

On appeal, Adams essentially raises the following issue for our review: whether the Board, upon finding a portion of the Ordinance constitutionally invalid, erred in failing to grant the "site-specific" zoning relief requested by Adams.[6]

In support of its argument, Adams relies heavily on the decision of our Supreme

---

4. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202. Section 916.1 was added by the Act of December 21, 1988, P.L. 1329.

5. Our standard of review in a zoning appeal, where the Court of Common Pleas takes no additional evidence, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Lex v. Zoning Hearing Board of Hampton Township*, 725 A.2d 236 (Pa.Cmwlth.1999).

6. In the Statement of Issues Presented, Adams actually presented the following three questions for review:

    1. DID THE ZHB AND THE LOWER COURT ERR IN SETTING OUT AS ITS PRINCIPAL FUNCTION THE MAKING OF A RECOMMENDATION TO THE LEGISLATIVE BODY OF A "CURATIVE AMENDMENT" GIVEN A FINDING THAT THE ZONING ORDINANCE WAS INVALID?
    ....
    2. DID THE ZHB AND THE LOWER COURT ERR IN FAILING TO WEIGH THE "ALL–OUT EFFORT" BY THE BOROUGH OF MT. POCONO IN ENACTING AN AMENDMENT TO ARTICLE IX OF THE ORDINANCE TO IMPOSE SEVERE LIMITATIONS ON OUTDOOR ADVERTISING SIGNS?
    ....
    3. DID THE ZHB AND THE LOWER COURT ERR IN FAILING TO AWARD "SITE SPECIFIC" RELIEF AS REQUESTED BY ADAMS AND DOES THIS COURT

NOW HAVE DISCRETION TO GRANT SUCH RELIEF?
    ....

(Appellants' Brief at 4). Adams' argument and its prayer for relief, however, simply suggest that Adams should be entitled to "site-specific" relief.

We also note that Adams, in arguing its first issue, concedes that, if the Board's use of the term "curative amendment" was in the context of Section 916.1(c)(5) of the MPC, "its action [of recommending a curative amendment] is understandable." (Appellants' Brief at 13). This is exactly what the Board did under Conclusion of Law No. 8 when it said, "In accordance with Section 916.1(c)(5) of the [MPC] it is recommended to the Borough of Mount Pocono that ... the Zoning Ordinance be amended...." (Board's Opinions at 3) (citation omitted).

Furthermore, with regard to the second issue raised, Adams commits a large portion of its brief to putting forth federal case law explaining the importance of protecting free speech, but fails to present a lucid argument regarding how notions of free speech are being offended. Adams simply states that: "The implication of the ... Ordinance is obvious. Political speech is prohibited from using outdoor advertising signs. Commercial speech is preferred over non-commercial speech." (Appellants' Brief at 26). The Board, however, has already determined that the Ordinance impermissibly restricts free speech and it recommended an amendment to cure this constitutional infirmity. Thus, it is unclear why Adams continues to argue an issue that has already been decided in its favor.

Court in *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974), and its progeny, for the proposition that, following a determination that a zoning ordinance is constitutionally infirm, the successful challenger is entitled to a grant of definitive relief. Adams' reliance, however, is misplaced.

In *Casey* and the line of cases that followed, the parties challenging the validity of an ordinance attacked portions of the ordinance that actually prohibited their intended use; the granting of "site-specific" relief in those cases would remedy the harm caused by the constitutional infirmity of the challenged ordinances. *See Casey* (challenger sought permit to develop multi-family dwellings and ordinance was found unconstitutional because it failed to permit multi-family dwellings anywhere in the municipality); *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985) (challenger sought to erect multi-family dwellings and ordinance was found unconstitutional because it failed to permit multi-family dwellings anywhere in the municipality); *Adams Outdoor Advertising. Ltd. v. Hanover Township Zoning Hearing Board,* 159 Pa. Cmwlth. 372, 633 A.2d 240 (1993) (challenger sought to erect off-site advertising sign and ordinance was found unconstitutional on basis that off-site advertising signs were *de jure* excluded in the municipality). The same is not true in the appeals now before us.

Here, Adams' applications to construct the dimensionally nonconforming signs were not affected by the provision of the Ordinance found to be infirm. The Board determined that the Ordinance improperly failed to permit political and other noncommercial speech on outdoor advertising signs. The Board specifically rejected Adams' challenge to the dimensional requirements of Section 9.8(C), concluding that

> Section 9.8.C of the Zoning Ordinance regarding the dimensional restrictions upon advertising signs as to size, height, separation between signs and separation from public street intersections is not exclusionary on its face or as applied, nor is it unduly restrictive, and, therefore, represents a constitutional exercise of the Borough's police power in the interest of the general health, safety and welfare of the community.

(Board's Opinions at 3). Thus, if any "site-specific" relief should be granted, it would be to permit the use of political or other noncommercial speech on outdoor advertising signs; it would not be proper to completely disregard other reasonable provisions of the Ordinance and allow Adams to construct dimensionally nonconforming signs. Accordingly, we hold that the Board did not commit any error of law or abuse its discretion in denying Adams' request for "site-specific" zoning relief, and the orders of the Court of Common Pleas are affirmed.

## ORDER

**NOW,** *July 24, 2002,* the orders of the Court of Common Pleas of Monroe County in the above-captioned matters are hereby affirmed.