**Frank M. TRIGONA, an individual, and Trigona Corporation, a Pennsylvania Corporation**

v.

**George LENDER, an individual, and the City of Jeannette, a Pennsylvania Municipal Corporation.**

**Appeal of: City of Jeannette.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.

Decided June 14, 2007.

Gary A. Falatovich, Greensburg, for appellant.

David J. Millstein, Armbrust, for appellees, Frank M. Trigona and Trigona Corporation.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

We consider for the first time whether a municipality may compel the payment of municipal obligations through the denial of licenses and permits required for real property development. More specifically, the City of Jeannette (City) adopted Ordinance 05–01 (Ordinance) prohibiting the issuance of licenses and permits pertaining to real property if the applicant owes real estate taxes or municipal debt to the City. The Court of Common Pleas of Westmoreland County (trial court) declared the Ordinance invalid as an unauthorized tax collection device. On appeal, the City contends the Ordinance is a valid exercise of its police power, or in the alternative, it has inherent power under The

Third Class City Code[1] to pass ordinances for the collection of real estate taxes and other municipal debt. Concluding the Ordinance contravenes statutory law, we affirm.

## I. Background

This case began when Frank M. Trigona, individually, and Trigona Corporation (Corporation) (collectively, Appellees) filed a three-count complaint in mandamus and for declaratory judgment and a motion for peremptory judgment. In particular, Count III of the complaint alleged that Ordinance is a tax collection device not authorized by The Third Class City Code. Appellees sought a declaration from the trial court that the Ordinance exceeds the City's statutory authority.[2]

Limited discovery ensued, and the parties subsequently filed cross-motions for summary judgment. In a comprehensive opinion, the respected trial court found the intent of the Ordinance is to sanction persons delinquent in the payment of taxes and, as such, serves as a tax collection device. The court then examined The Third Class City Code for statutory authority allowing the City to enact the Ordinance. Finding none, the trial court held the Ordinance invalid and granted Appellees' summary judgment motion. The City appeals.[3]

## II. Ordinance

Our discussion begins with a review of the Ordinance. Recited at length with added emphasis, it provides:

**AN ORDINANCE OF THE [CITY], PROHIBITING THE ISSUANCE OF ANY LICENSE OR PERMIT FOR THE OCCUPANCY, DEMOLITION, CONSTRUCTION AND/OR IMPROVEMENT OF ANY PROPERTY SUBJECT TO LICENSING OR PERMITTING WITHOUT THE PAYMENT OF OUTSTANDING TAXES, FEES FOR MUNICIPAL SERVICES, MUNICIPAL CLAIMS, FINES OR DEBT**

WHEREAS, the [City] has enacted various [o]rdinances and regulations, currently in ... effect within the City, that require the issuance of licenses and permits subject to the individual requirements of same; and

---

1. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

2. Counts I and II of the complaint, seeking mandamus, are not at issue here. In Count I, Corporation alleged a City code enforcement officer wrongfully denied it a health permit solely due to Trigona's outstanding personal real estate tax debt. Corporation sought an order compelling issuance of the health permit and money damages. In Count II, Trigona sought an order compelling the code enforcement officer to issue a building permit to repair real property severely damaged by a windstorm. The trial court denied Appellees' peremptory judgment motion concluding Appellees' failed to establish a clear right to relief or lack of an appropriate remedy. In a subsequent order, the trial court dismissed Appellees' mandamus action without prejudice based on *Appellees'* representations not to pursue mandamus.

3. An appellate court may only disturb the decision of a trial court granting or denying summary judgment pursuant to Pa. R.C.P. Nos. 1035.1–1035.5 if it determines the trial court committed an error of law or abused its discretion. *Farabaugh v. Pa. Tpk. Comm'n,* 590 Pa. 46, 911 A.2d 1264 (2006). In considering summary judgment motions, both trial and appellate courts must view the evidence in a light most favorable to the non-moving party, and should grant summary judgment only where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* An issue is material if its resolution could affect the outcome of the case under the governing law. *Id.*

WHEREAS, such permitting and licensing [o]rdinances and regulations, and amendments thereto, have been enacted by the Council of the [City] for the protection of the public health, safety and well-being; and

WHEREAS, those licensing and permitting [o]rdinances and regulations enacted and in effect within the [City] provide penalties for non-compliance with same; and

WHEREAS, the City imposes certain real property taxes and municipal service fees upon property owners associated with providing municipal services to such properties; and

*WHEREAS, monies generated from real property taxes and municipal service fees are essential to the continuing operation of the City and its ability to provide municipal services to its residents for the protection of their health[,] safety and well being on a continuing basis;* and

WHEREAS, the ability to lease and/or occupy real estate and utilize municipal services is a privilege to property owners; and

*WHEREAS, the Council of the [City], in an effort to ensure its continuing ability to provide municipal services to property owners within the City for the continuing protection of their health, safety and well being, believe it is proper to deny and or withhold the issuance of licenses and/or permits to property owners subject to licensing or permitting under those various [o]rdinances and regulations of the [City] referenced above, until all outstanding and delinquent taxes, fees for municipal services and/or any other municipal claims, fines or debt of any nature or kind due and owing the City have been paid in full.*

NOW, THEREFORE, WITH THE FOREGOING RECITALS BEING IN- CORPORATED HEREIN BY REFERENCE THERETO, THE COUNCIL OF THE [CITY] HEREBY ORDAINS AND ENACTS AS FOLLOWS:

1. From and after the effective date of this Ordinance, no person, corporation, entity or firm shall be issued any license, building permit, occupancy permit, demolition permit or any other permit associated with construction, demolition, use and/or occupancy of any property in the [City] subject to such licensing or permitting under any [o]rdinance or regulation in effect within the City, unless all outstanding real estate taxes, fees for municipal services and/or any other municipal claims, fines or debt of any nature or kind due and owing the [City], by such person, corporation, entity or firm, have been paid in full. *No corporation, partnership or business entity shall be issued any license or permit* referenced hereunder in the name of such partnership, corporation, entity or firm, *if any owner, officer, director or shareholder in such partnership, corporation[,] business entity or firm owes any indebtedness* referenced in this Ordinance in an individual capacity, unless such individual debt is paid in full.

2. From and after the effective date of this Ordinance, no person or other business entity, who is a partner, owner, shareholder, officer or director of any corporation or other business entity, shall be issued any license, building permit, occupancy permit, demolition permit or any other license or permit associated with construction, demolition, use and/or occupancy of any property in the [City] subject to such permitting, under any [o]rdinance in effect within the City, in an individual capacity, unless all outstanding real estate taxes, fees for municipal services and/or any other municipal claims, fines or debt of any nature or

kind due and owing the [City], by the partnership, corporation or firm in which they participate as a partner, shareholder, officer, director or owner, have been paid in full.

3. For purposes of this Ordinance, the term *"real estate taxes "* shall mean and include any real property tax assessed by the City against any parcel of real estate within the geopolitical boundaries of the [City], together with any penalty or interest accrued upon same, that is not paid within the calendar year of its assessment, notwithstanding the fact that such delinquent tax has been turned over to the Tax claim Bureau of the County of Westmoreland, ... for delinquent tax collection purposes.

4. For purposes of this Ordinance, the term *"municipal services "* shall mean any municipal service provided by the [City] to or for the benefit of any person, corporation, entity or firm owning property within the geo-political boundaries of the [City], such services to be deemed to include, but not limited to, garbage collection services, alley and/or street paving services, or any other services provided by the City, through its employees, agents or assigns, to property owners for which a fee is assessed.

5. For purposes of this Ordinance, the term *"municipal claims, fines or debt "* shall mean outstanding indebtedness subject to any municipal claim either filed by the City or capable of being filed by the City, any outstanding Magisterially or Court imposed fine or penalty associated with or arising from matters associated with the ownership of real property within the geo-political boundaries of the City and all other debt, of whatsoever nature and kind, arising from the ownership, use, maintenance or control of any and all real property of the owner within the geopolitical boundaries of the City.

6. The provisions of this Ordinance shall apply to any person, entity, corporation or firm who owes outstanding real estate taxes, municipal service fees or municipal claims, fines or debt on any property within the geo-political boundaries of the [City], regardless of whether such outstanding real estate taxes, municipal service fees, municipal claims, fines or debt are assessable to or against the property for which a permit is sought.

7. Any person, entity, corporation or firm making application for any license or permit required by any [o]rdinance of the [City] shall attach, along with such permit application, a Certification from the City Treasurer's office, in a form prescribed by the City, verifying that all real estate taxes and all fees for municipal services on all property owned by such person, entity, corporation or firm within the geo-political boundaries of the [City] have been paid in full at the time the application for such permit is made. Such Certification shall include a sworn statement by the applicant disclosing the following information where applicable:

a. *Where the Applicant is an Individual*—The name and address of any partnership, corporation, sole proprietorship or other business entity in which the applicant participates as owner, director, officer, shareholder or partners, whether within the [City] or not; and

b. *Where the Applicant is a Business Entity Other than an Individual*— The name and address of all individuals acting as owners, partners, directors, officers or shareholders in such business entity.

8. This Ordinance shall apply to all owner occupied single family residential dwellings, all two (2) family or other multi-family residential dwelling and/or

residential units, commercial and/or industrial facilities within the geo-political boundaries of the [City], subject to licensing or permitting under those various [o]rdinances of the [City] referenced above.

9. The terms, words, phrases and provisions of this Ordinance are severable. In the event any term, condition, provision or phrase in this Ordinance shall be deemed by a Court of competent jurisdiction as void or unenforceable, then the remaining terms, conditions, provisions and phrases set forth herein shall continue in full force and effect.

Reproduced Record (R.R) at 6–9.

### III. Contentions

#### A.

On appeal, the City maintains the Ordinance is a valid exercise of its police power. Alternatively, the City asserts inherent rights under The Third Class City Code, and other tax and municipal legislation, to withhold licenses and permits as a means of collecting real estate taxes and municipal debt.

**4.** 1 Pa.C.S. §§ 1501–1991. The rules of statutory construction apply to ordinances. *Twp. of W. Manchester v. Mayo,* 746 A.2d 666 (Pa. Cmwlth.2000).

**5.** Section 1921(c) provides that where the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any; the consequences of a particular interpretation; contemporaneous legislative history; and, the legislative and administrative interpretations of such statute. 1 Pa.C.S. § 1921(c).

**6.** The Solicitor's affidavit avers the City adopted the Ordinance to: prevent owners

#### 1.

The City first asserts the Ordinance is a valid exercise of its police power. The Ordinance serves, in part, to preserve the City's real estate stock, prevent public nuisances, and prevent dilapidated buildings from becoming a charge to the City.

▮ As initial support, the City argues the trial court improperly applied the Statutory Construction Act of 1972.[4] The trial court determined the Ordinance is clear and free from ambiguity. Consequently, the court did not look beyond the terms of the Ordinance when concluding it is a tax collection device. *See* Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit").

Urging application of Section 1921(c) of the Rules of Statutory Construction,[5] the City contends the trial court disregarded the only evidence presented, that is, its Solicitor's affidavit. Solicitor's affidavit sets forth the City's purported intentions for adopting the Ordinance.[6] The trial court, in the City's view, embraced a restrictive interpretation of the Ordinance notwithstanding the requirement that stat-

from abandoning real estate within the City; decrease the burden of abandoned properties on municipal resources; limit devaluation of the City's tax base; require property owners to satisfy existing civic responsibilities before undertaking new endeavors; prevent formation of shell corporations for beneficial ownership of real estate while allowing abandonment of other properties held individually or in another corporate name; ensure individuals purchasing, occupying and improving properties have financial resources to maintain them; and, protect property values, preserve the integrity of the City's housing stock, deter creation of public nuisances, and protect the health, safety and general welfare of the public. R.R. at 10–16.

utes be liberally construed. 1 Pa.C.S. § 1928. When read as a whole, the Ordinance attends to matters associated with the regulation of real estate development within the City, the prevention of blight and over-utilization of municipal resources, and the protection of community health, safety, and well-being.

In addition, the City relies on Section 2403(60) of The Third Class City Code, 53 P.S. § 37403(60). That section generally authorizes third class cities to make and adopt ordinances not inconsistent with or constrained by the Constitution or the laws of Pennsylvania necessary for the proper management, care and control of the city, and the maintenance of peace, good government, safety and welfare of the city.

The City maintains because Section 2403(60) is afforded liberal construction, *Adams v. City of New Kensington*, 357 Pa. 557, 55 A.2d 392 (1947), the trial court erroneously ascertained the Ordinance's intent before determining the City's authority to pass it. The City's intent should have been examined only after a determination of whether it possesses authority to issue and deny licenses and permits relating to real property use and development. Under this analysis, the trial court could have determined the Ordinance is valid as promoting public health, safety and welfare, and bearing a rational relationship to the ends sought.

As final support for this argument, the City emphasizes its police power to promote the public health, morals, safety, and general well-being of a community, including the prevention of public nuisances, blight, and the disproportionate utilization of municipal services. *See Nat'l Wood Preservers, Inc. v. Dep't of Envtl. Res.*, 489 Pa. 221, 414 A.2d 37 (1980) (police power is the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare).

### 2.

In the alternative, the City claims inherent rights under The Third Class City Code, and other municipal legislation, to withhold licenses and permits as a means of collecting outstanding real estate taxes and municipal obligations. The City finds support in the absence of express prohibition in The Third Class City Code. Further relying on its power to impose and collect taxes and municipal fees pursuant to The Local Tax Enabling Act,[7] and the statute commonly known as the Municipal Claims and Tax Liens Act (Municipal Claims Act),[8] the City contends the Municipal Claims Act does not provide the exclusive means for tax and municipal debt collection. According to the City, the Municipal Claims Act reserves all prior methods and rights available to municipalities for the collection of taxes.[9] When read together, The Third Class City Code, The Local Tax Enabling Act, and the Municipal Claims Act, vest the City with broad municipal power to provide its citizens with a variety of services, to ensure the preservation of property value, and to protect the general health, safety, and welfare. Finally, the Ordinance ensures adequate means to fund required municipal services.

---

**7.** Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6901–6930.13.

**8.** Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7105–7505.

**9.** *See* Section 41 of the Municipal Claims Act, 53 P.S. § 7112, which states in part:

> Nothing contained in this act shall be construed to repeal or affect the validity of any other acts of Assembly providing other methods or remedies for the collection of taxes and municipal claims. Municipalities and use-claimants shall have and retain the right to proceed to collect such claims by assumpsit, distraint, or under the acts relating to the collection of taxes upon seated and unseated land, or in any other way or by any other method authorized by law, as though this act had not been passed.

**B.**

Responding to the City's arguments, Appellees adopt the trial court's position that Section 1921(c) of the Statutory Construction Act is inapplicable because the legislative intent of the Ordinance is stated in its preamble. In addition, Appellees maintain, once the trial court determined the Ordinance is a tax collection device, The Third Class City Code provides the exclusive means by which the City may collect real property taxes and municipal debt. Finally, Appellees dismiss the City's inherent rights argument, relying on the general rule that municipalities possess only such powers of government expressly granted and necessary to carry the same into effect. *Devlin v. City of Phila.*, 580 Pa. 564, 862 A.2d 1234 (2004).

## IV. Discussion

### A.

 Preliminarily, municipal ordinances are presumed valid, and the burden is on the challenger to prove otherwise. *Cranberry Park Assocs. ex rel. Viola v. Cranberry Twp. Zoning Hearing Bd.*, 561 Pa. 456, 751 A.2d 165 (2000). Accordingly, a court's role in passing on the validity of an ordinance is limited: a municipal ordinance may be declared invalid only when it violates fundamental law clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the court's mind. *Adams Outdoor Adver. Ltd. v. Hanover Twp. Zoning Hearing Bd.*, 159 Pa.Cmwlth. 372, 633 A.2d 240 (1993). Where the validity of an ordinance is debatable, the ordinance will be upheld as valid, and if there is room for difference of opinion as to whether the ordinance is designed to serve a proper public purpose, the court should

not substitute its judgment for that of the governing body which enacted the legislation. *Bilbar Constr. Co. v. Bd. of Adjustment of Easttown Twp.*, 393 Pa. 62, 141 A.2d 851 (1958).

The Rules of Statutory Construction can be helpful in interpreting municipal ordinances. The object of statutory interpretation is to determine the intent of the governing body. *Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 590 Pa. 188, 912 A.2d 259 (2006). Where a statute is unambiguous, the judiciary may not ignore the plain language "under the pretext of pursing its spirit," for the language of a statute is the best indication of legislative intent. *Id.* When the words of a statute are clear, there is no need to look beyond the language of the statute. *Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.)*, 564 Pa. 656, 770 A.2d 318 (2001).

### B.

 As the trial court observed, the Ordinance's preamble evinces the City's intent. More specifically, paragraphs 5 and 7 of the preamble clearly state that in order to ensure the City's ability to provide continued municipal services funded through taxes and other municipal debt, the City "believe[s] it is proper to deny or withhold the issuance of licenses and/or permits to property owners ... until all outstanding and delinquent taxes, fees for municipal services and/or any other municipal claims, fines, or debts of any nature or kind due and owing the City have been paid in full." R.R. at 6–7. For this reason, we reject the City's argument that Section 1921(c) of the Rules of Statutory Construction apply to reveal the intent of the Ordinance, and we discern no error in the conclusion the Ordinance is intended to be a tax collection device.[10]

---

10. Because the City's intentions are plainly stated on the face of the Ordinance, the trial court properly disregarded Solicitor's affida-

vit as an impermissible attempt to create an issue of material fact precluding summary judgment. Solicitor's affidavit cannot be

### C.

We also reject the City's contention that Section 2403(60) of The Third Class City Code, 53 P.S. § 37403(60), grants broad, unenumerated police powers sufficient to enable the Ordinance here. As relevant, that provision permits the adoption of ordinances not inconsistent with state law as may be necessary for the proper management of a city and its finances. However, as more fully discussed hereafter, the Ordinance creates a method of tax and municipal claim collection unauthorized by state statute. To this extent, the Ordinance is inconsistent with long-established state law, and it is not enabled by the catch-all provision of The Third Class City Code.

### D.

 We now consider whether any taxing and municipal claims legislation permits the City to withhold the issuance of licenses and permits required for real property use where the owner owes real estate taxes or other municipal debt. As a general rule, a municipality does not possess and cannot exercise any other than the following powers: 1) those expressly granted; 2) those necessary or fairly implied in or incident to the powers expressly granted; and 3) those indispensable to the declared objects and purposes of the municipality. *In re Valley Deposit & Trust Co. of Belle Vernon*, 311 Pa. 495, 167 A. 42 (1933). A municipality is powerless to enact ordinances except as authorized by statute, and ordinances not in conformity with its enabling statute will be void. *City of Phila. v. Schweiker*, 579 Pa. 591, 858 A.2d 75 (2004).

The Supreme Court recently explained the difference between real estate taxes and other municipal claims:

used to create doubt as to the City's intentions regarding passage of the Ordinance. *In re Kritz' Estate,* 387 Pa. 223, 127 A.2d 720

Historically, the legislature divided taxes into two categories: general and special taxes. *General taxes were levied by a municipality to pay for its expenses, compelling all citizens and property within its limits to contribute.* In exchange for their contributions, the citizens and property received no special individual benefit, but only a general societal benefit. *Special taxes, on the other hand, were levied by a municipality on certain properties to pay for improvements that only enhanced the value of the specially taxed property.*

*Today, the General Assembly continues to differentiate between the legal claims arising from these two types of assessments, calling claims arising from unpaid general taxes "tax claims" and claims arising from unpaid special taxes "municipal claims".* Specifically Section [1 of the Municipal Claims Act] defines a "tax claim" as a "claim filed to recover taxes." 53 P.S. § 7101. Meanwhile, "municipal claim" is defined ... as a claim arising out of or resulting from a tax assessed by a municipality to recover for a taxpayer's benefits from local improvements, services supplied, work done, or improvements authorized and undertaken by the municipality, although the assessment amount is not definitely ascertained at the time of the claim and a lien has not yet been filed. Thus, [the Municipal Claims Act] makes an explicit distinction between tax claims filed as a result of unpaid general taxes, ... and municipal claims filed as a result of unpaid special taxes.

*Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 54–55, 820 A.2d 1240, 1252–53 (2003) (citations omitted, emphasis added).

(1957) (rules of statutory construction are not to be used to create doubt, but only to remove it).

This distinction is further observed in the statutory collection methods authorized by the Municipal Claims Act and The Third Class City Code. Section 1 of the Municipal Claims Act [11] sets local taxes as first liens on real property when assessed by the proper authority. Similarly, Section 3 of the Municipal Claims Act, 53 P.S. § 7106, provides all municipal claims are liens on the improved property when assessed. In accord with these provisions, Sections 9 through 11, 53 P.S. §§ 7143–45, set forth the time, place and manner of filing of claims. Consistent with the Municipal Claims Act, The Third Class City Code requires the city treasurer to schedule uncollected taxes for the purpose of lien or sale. Sections 2537 and 2541 of The Third Class City Code, 53 P.S. §§ 37537 and 37541.

A third class city derives its municipal claims collection authority from The Third Class City Code. In particular, Section 3302 of The Third Class City Code, 53 P.S. § 38302, authorizes assessment collection in the same manner as the collection of municipal claims. Municipal claims collection is governed by Section 4601 of The Third Class City Code, 53 P.S. § 39601. In addition to the filing of liens, Section 4601 authorizes third class cities to proceed in assumpsit against the appropriate property owner. The Third Class City Code is consistent with Section 1 of the Municipal Claims Act, which authorizes other municipal corporations to pursue actions in assumpsit in addition to filing liens for the collection of municipal claims. 53 P.S. § 7251.

■ The above statutory provisions provide an exclusive framework for the collection of real property taxes and municipal claims by third class cities. Municipal claims are creatures of statute; and any right to enforce collection is also statutory.

*City of Scranton v. Genet,* 232 Pa. 272, 81 A. 335 (1911); *City of Phila. to Use of Vulcanite Paving Co. v. Cooper,* 212 Pa. 306, 308, 61 A. 926, 926 (1905) ("[t]he lien ... or municipal claim being by statute, its validity, duration, and extent are wholly dependent upon compliance with the statutory provisions"); *City of Franklin v. Hancock,* 204 Pa. 110, 53 A. 644 (1902) (assessment for street paving is a tax, which cannot be collected as an ordinary debt by a common-law action unless such remedy is given by statute).

Our conclusion that the foregoing statutes provide the exclusive framework for the City's collection of taxes and municipal claims is consistent with the rule that statutes are to be construed in harmony with the existing law and as part of a general and uniform system of jurisprudence. *Northern Tier Solid Waste Auth. v. Dep't of Revenue,* 860 A.2d 1173 (Pa.Cmwlth. 2004).

### 1. Express Authority

We find nothing in either the Municipal Claims Act or The Third Class City Code authorizing the City to employ other methods of municipal obligations collection. Therefore, there is no express grant of authority for the Ordinance here.

### 2. Implied Authority

We further conclude the Ordinance's tax and municipal debt collection method cannot be deemed "fairly implied" from the powers expressly granted. As noted above, the General Assembly enacted a comprehensive scheme governing the collection of taxes and municipal claims. The Ordinance embodies a method of collection not envisioned by the comprehensive statutory scheme.

11. Act of March 21, 1945, P.L. 47, *as amended,* 53 P.S. § 7102.

### 3. Indispensable Authority

Moreover, the Ordinance is not "essential to the declared objects and purposes" of the City. The City adopted other ordinances and regulations pertaining to the development and use of real property which provide penalties for non-compliance. R.R. at 6. Enforcement of these provisions alleviates the asserted harms.

In sum, we conclude that the City lacked express, implied and necessary power to enact the Ordinance.

### E.

 There is another reason to conclude that the Ordinance is in excess of the City's powers to collect taxes and municipal claims. The Ordinance here imposes a disability on a delinquent property owner, not on delinquent property. It raises, therefore, a procedure against persons, as opposed to an *in rem* or property-based remedy. In fact, the personal disability extends to other persons of business affiliation with a delinquent property owner, so as to potentially prohibit the approval of their otherwise valid license and permit applications for other properties. Thus, under Section 1 of the Ordinance, if any shareholder, officer or director of a business entity is in default, permits and licenses will be withheld from the entire business.

However, the statutory provisions discussed above restrict the collection of municipal obligations to those directly associated with the particular property for which the taxes or claims are owed. *Cf. Ransom v. Marrazzo*, 848 F.2d 398 (3d. Cir.1988) (state-authorized lien and local ordinance denying water service until satisfaction of outstanding service charges did not impose personal liability but rather affected the property, merely making payment of delinquency a condition of continued service); *Skupien v. Borough of Gallitzin*, 134 Pa. Cmwlth. 115, 578 A.2d 577 (1990) (city ordinance imposing personal liability on property owner for failure of tenant to satisfy obligation for water services authorized by Section 1 of the Municipal Claims Act). For this reason, the Ordinance creates an impermissibly broad remedy.

For all the foregoing reasons, we affirm.

### ORDER

AND NOW, this 14th day of June, 2007, the order of the Court of Common Pleas of Westmoreland County is **AFFIRMED**.