Bloomsburg Industrial Ventures, LLC, :
      Appellant :
          :
   v. :
          :  No. 961 C.D. 2019
Town of Bloomsburg    :  Argued: September 17, 2020


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON     FILED: November 5, 2020


Bloomsburg Industrial Ventures, LLC (BIV) appeals an order of the Court of Common Pleas of the 26th Judicial District, Columbia County branch (trial court) sustaining the decision of the Town Council of Bloomsburg (Town Council) in two consolidated cases denying BIV's curative amendment challenges to the validity of the Bloomsburg Zoning Ordinance (Ordinance). Upon review, we reverse and remand.

**Railroad Street Property**

BIV owns a 1.156-acre tract of land at the corner of Sixth and Railroad Streets (Railroad Street Property) in the Town of Bloomsburg (Town), which is located partly in the Town's Industrial Park (I-P) Zoning District and partly in its

Business Campus (BC) Zoning District.[1]  Reproduced Record (R.R.) at 16a, 67a.
The Railroad Street Property is improved with an existing 40,000-square-foot
building, straddling both zoning districts, which BIV proposes to use as a 168-bed
transitional living facility.  R.R. at 16a-18a.  The Ordinance does not define the term
"transitional living facility" or specifically list it as a permitted use in any of the
Town's zoning districts.  R.R. at 16a, 67a-68a, 203a-56a.  As such, on September
13, 2018, BIV submitted a substantive validity challenge to Town Council, pursuant

---

[1] The Ordinance provides that the following are permitted uses in the I-P Zoning District:
manufacturing; wholesale activity and related business offices; warehousing; agricultural produce
wholesale activities; agricultural equipment handling and sales, service and supply; building
supply, service, storage and sales; contractor construction yards and storage; municipal and public
utility garages and storage yards; public transportation depot; welding, machine and print shops;
laundry and dry cleaning plants; automotive, mobile home, and related sales, service or storage;
and "[a]ccessory uses on the same lot with and customarily incidental to any of the above permitted
uses including, but not limited to, cafeteria, nursery and daycare schools, and health clinics."
Ordinance § 27-510, Reproduced Record (R.R.) at 244a-45a.  In addition, natural resource
production uses and municipal buildings are listed as special exception uses, and airports are listed
as conditional uses in the I-P Zoning District.  Ordinance § 27-510, R.R. at 245a.
   The Ordinance provides that the following are permitted uses in the BC Zoning District:
single-unit dwellings, two-unit dwellings, and multiple-unit dwellings; community living facilities
and conversion apartments; retail stores, personal service shops (grocery, drugs, general
merchandise, beauty parlors, barbershops, laundry, dry cleaning, and shoe repair); business,
professional, and financial offices and banks; nursing homes, daycare and adult daycare facilities
and assisted living facilities; continuing-care retirement communities; restaurants, tearooms, cafes,
and other places serving food and beverages; private, public, and semipublic transportation
terminals; enclosed warehouse or other storage facilities; theaters, fitness centers, and indoor
and/or outdoor recreation trails and facilities; hotels, motels, and convention and conference
centers; parking lots; instructional facilities, museums, and libraries; dwelling units above or in
combination with any permitted use in a mixed use structure; drive-in/drive-thru service for any
permitted use; and "[a]ccessory uses on the same lot with and customarily incidental to any of the
above permitted uses."  Ordinance § 27-514, R.R. at 254a-55a.  Further, mortuaries, churches and
similar places of worship, municipal buildings, commercial communications antennas and towers,
and light industry are listed as special exception uses, and schools and colleges are listed as
conditional uses in the BC Zoning District.  Ordinance § 27-514, R.R. at 255a.  Section 27-514(5)
of the Ordinance, titled "Prohibited Uses," states that "[a]ll uses not specifically provided for above
shall be prohibited" within the BC Zoning District.  R.R. at 255a.

2

to Section 609.1 of the Pennsylvania Municipalities Planning Code (MPC),[2] asserting the Ordinance is unconstitutionally exclusionary and requesting a curative amendment to add transitional living facility as a permitted use within the Town's BC Zoning District. R.R. at 16a-20a. Section 609.1(a) of the MPC provides, in part:

> [a] landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided as provided in section 916.1. The governing body shall commence a hearing thereon within 60 days of the request . . . .

53 P.S. § 10609.1(a).

Along with its challenge, BIV submitted to Town Council a proposed curative amendment seeking to add the following definition to the Ordinance:

**Transitional Living Facility**

A place that includes housing or lodging and meals and which provides a safe structured, supervised and supportive drug and alcohol-free environment, that may include peer support, employment counseling, job placement, financial management assistance, and other programs and services to individuals making the transition from controlled group quarters living to one of independent or semi-independent living in ordinary society; including but not limited to incarcerated individuals, individuals being released from drug and alcohol addiction treatment programs and/or individuals having undergone psychiatric treatment and being

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10609.1.

3

declared mentally competent and ready to resume life in ordinary society.

R.R. at 20a. In addition, the proposed curative amendment sought to add the following section to Chapter 27 of the Ordinance:

**§ 27-407 Split Zoning.**

Where an existing building is placed in more than one zoning district, the owner of such building may utilize it for any of the uses permitted in all such districts, regardless [of] whether the use is primarily in one district or another.

R.R. at 20a.

Town Council conducted a hearing on BIV's substantive validity challenge on November 7, 2018. R.R. at 6a, 54a. Matthew Zoppetti, a developer and the principal of BIV, testified that he read the Ordinance "probably 100 times front to back and back to front," and was unable to find transitional living facility as a permitted use anywhere in the Ordinance. R.R. at 67a-68a. Because of this, BIV hired Shepstone Management Company, a planning and research firm, to prepare a curative amendment for this particular use. R.R. at 68a-69a, 80a.

Mr. Zoppetti testified that various types of facilities could be considered within BIV's proposed definition of a transitional living facility, including a transitional living activity as defined by the Department of Drug and Alcohol Programs' regulations, R.R. at 69a-71a;[3] community corrections facilities run by the

---

[3] Mr. Zoppetti further explained that he was referring to the following definition:

Transitional living activity--The provision of supportive services in a semi[-]protected home-like environment to assist a client in his gradual reentry into the community. No formal treatment--

4

Department of Corrections, R.R. at 71a-72a; and residential reentry or halfway houses under the Federal Bureau of Prisons, R.R. at 72a-73a. He further testified that BIV might operate a mix of these facilities at the Railroad Street Property, and that the precise nature of the facility might change from time to time. R.R. at 73a.

On cross-examination, Mr. Zoppetti admitted that BIV applied for and was granted a permit under the Ordinance to operate a community living facility within the "proper zone. . . ."[4] R.R. at 75a. He went on to explain that the Ordinance requires that residents of community living facilities have mental health problems or conditions, whereas BIV's currently proposed transitional living facility would not be limited to only those individuals diagnosed with mental health conditions. R.R. at 75a-76a. Therefore, Mr. Zoppetti did not believe that BIV's currently proposed facility fit within the Ordinance's definition of a community living facility. R.R. at 76a.

Thomas Shepstone, principal of Shepstone Management Company, testified on behalf of BIV as an expert in planning and zoning, having written in excess of 40 zoning ordinances in both Pennsylvania and New York. R.R. at 81a-

---

counseling/psychotherapy--takes place at the facility. This is a live-in/work-out situation.

28 Pa. Code § 701.1. A copy of this regulation was entered into the record before Town Council. R.R. at 70a.

[4] The Ordinance defines the term "community living facility" as "[a] living arrangement whereby unrelated individuals with diagnosed mental health or mental retardation problems reside on a permanent basis with twenty-four-hour supervision and whose primary purpose is the development and maintenance of community living skills." Ordinance § 27-302, R.R. at 209a. Further, a community living facility is a permitted use within the Town's Residential Conservation, Residential Suburban, Residential Urban, High-Density Residential, Commercial, Commercial Residential, HE-C, and BC Zoning Districts. R.R. at 230a-54a. This is the only mention in the transcript of BIV's application for such a permit. Therefore, it is unclear to us what is being referred to here as the "proper zone" or the specifics of BIV's proposed community living facility.

82a. Mr. Shepstone stated that he reviewed the Ordinance to be sure that the use of a transitional living facility "was not provided for either under the terms specifically or in some other context," R.R. at 83a, and he found that it was not. *Id.* Mr. Shepstone noted that in several zoning districts, including the BC Zoning District, the Ordinance states "[a]ll uses not specifically provided for above shall be prohibited." R.R. at 87a. Mr. Shepstone opined that the Town was not permitted to exclude the legitimate use of a transitional living facility and could not deny BIV's proposed plan at the Railroad Street Property even if it revised the Ordinance to allow a transitional living facility as a conditional use. R.R. at 91a, 95a. In addition, Mr. Shepstone confirmed that the facilities Mr. Zoppetti mentioned that are overseen by the Department of Drug and Alcohol Programs, the Department of Corrections, and the Federal Bureau of Prisons do not fall within any permitted uses under the Ordinance. R.R. at 92a-93a.

Mr. Shepstone testified that the Ordinance is approximately 30 years old, that ordinances should be looked at approximately every 10 years, if not more often, to address evolving concepts, and that this particular Ordinance needs updating. R.R. at 94a-95a. In addition, Mr. Shepstone stated that it is the responsibility of the municipality to correct any problems with its ordinance. *Id.*

Finally, on re-direct, Mr. Shepstone testified that after reviewing the Ordinance and maps of the Town, and after preparing the curative amendment, he believed the Railroad Street Property was the best location suited for use as a transitional living facility. R.R. at 101a.

The Town did not present any witnesses or substantive evidence at the hearing on the alleged exclusion of a transitional living facility. The only evidence

6

submitted by the Town was the public hearing notice, which was entered into evidence as Town's Exhibit 1.  R.R. at 108a.

On November 27, 2018, Town Council adopted Resolution No. 11-27-18.02, which effectively denied BIV's substantive validity challenge pertaining to transitional living facilities.  That resolution states, in pertinent part, as follows:

> IT IS RESOLVED:
>
> THAT the proposed use is controversial and unless carefully regulated and properly located is capable of exposing residents and neighborhoods to undesirable conditions;
>
> THAT the curative amendment suggested by [BIV] is unacceptable and fails to take into consideration the potential undesirable impact such use, as defined by [BIV], may have upon the safety and quality of life of residents and the negative impact such use may have upon adjacent property values;
>
> THAT the proposed use of land as a transitional living facility in the BC or IP Zoning [D]istricts is in conflict with the Town's Comprehensive Plan and the said use is not compatible in either district;
>
> THAT upon careful review of the evidence and the [] Ordinance, it is found that the proposed use is not specifically permitted in any of the Town's 13 [z]oning [d]istricts as a primary use but may be permitted, in a limited manner, as an "accessory use" or "continuum of care use" in the [Health Care] HE-C [Zoning] District.
>
> WHEREFORE, it is RESOLVED that [Town] Council will consult with the Town Planning Commission, review the Town's Comprehensive Plan and draft curing amendments to the Town's [] Ordinance to insure that the [] Ordinance is not unconstitutionally exclusionary.

7

R.R. at 21a-22a.

## West Sixth Street Property

BIV also owns a 1.586-acre tract of land located at 338 West Sixth Street (West Sixth Street Property) in the Town's BC Zoning District upon which it proposes to re-develop a portion of an existing building with a 48-bed homeless shelter. R.R. at 37a, 137a. Again, the Ordinance neither defines nor specifically lists homeless shelter as a permitted use in any of the Town's zoning districts. R.R. at 37a, 137a, 203a-56a. Therefore, BIV submitted a second curative amendment challenge to Town Council on September 13, 2018, asserting that the Ordinance is unconstitutionally exclusionary for failing to provide for the use of a homeless shelter and requesting that BIV be permitted to develop a homeless shelter at the West Sixth Street Property. R.R. at 37a-41a, 139a. BIV submitted a proposed curative amendment to add homeless shelter as a permitted use within the Town's BC Zoning District, and to add the following definition of "homeless shelter" to the Ordinance:

> A building set up to provide for the needs of homeless people; including but not limited to shelter, counseling, drug and alcohol recovery programs, food, sanitation or other forms of support.

R.R. at 41a.

At a hearing before Town Council,[5] Mr. Zoppetti testified that he and two experts agreed that homeless shelter was not a permitted use under the Ordinance. R.R. at 138a. As he explained, homeless shelter was not specifically

---

[5] Town Council conducted a hearing on BIV's homeless shelter challenge immediately following the hearing on BIV's transitional living facility challenge, and incorporated the transcript from the prior hearing into the record therein with no objection. R.R. at 136a.

listed anywhere in the Ordinance as a permitted use, and in the few zoning districts that did not state "any use not permitted is specifically prohibited," homeless shelter did not fit into the definition of another permitted use. *Id.* Mr. Zoppetti testified there was a range of services BIV intended to provide as part of the proposed homeless shelter, including:

> job skills, job readiness skills, household budgeting management, parenting skills, those suffering with mental health or addiction support, other necessities, hot meals, clothing, laundry, internet, voice mail. So it's a continuum of services to securing their journey to wellness and self-sufficiency and, hopefully, taxpayers as the end result.

R.R. at 139a-40a.

Mr. Shepstone again testified, stating that he reviewed the Ordinance and was not able to find a homeless shelter as a permitted use within any zoning district in the Town. R.R. at 150a. Mr. Shepstone stated that he drafted the curative amendment and that he based the definition of a homeless shelter, in part, on other such definitions rather than business models "because these could simply be contracted to somebody else to do it." R.R. at 150a-51a.

The Town did not present any witnesses or substantive evidence at the hearing on the alleged exclusion of a homeless shelter. Again, the only evidence submitted by the Town at the hearing was the public hearing notice, which was admitted into evidence as Town's Exhibit 2. R.R. at 135a.

On November 27, 2018, Town Council adopted another resolution effectively denying BIV's substantive validity challenge pertaining to a homeless shelter use. R.R. at 42a. Resolution No. 11-27-18.01 states, in pertinent part:

IT IS RESOLVED:

9

THAT a homeless shelter is a controversial use and unless carefully regulated and located is capable of exposing residents and neighborhoods to undesirable conditions;

THAT the curative amendment proposed by [BIV] is unacceptable in that it fails to take into consideration the potential negative impact of such use, as defined by [BIV], upon the safety and quality of life of residents and upon adjacent property values;

THAT the proposed use of land as a homeless shelter in the BC [Zoning D]istrict is in conflict with the Town's Comprehensive Plan and would not be a compatible use in the BC [Zoning D]istrict;

THAT the requested use is not specifically permitted in any of the Town's 13 [z]oning [d]istricts as a primary use but may be permitted, in a limited manner, as an "accessory use" or "continuum of care use" in the HE-C [Zoning] District.

WHEREFORE, it is RESOLVED that [Town] Council will consult with the Town Planning Commission, review the Town's Comprehensive Plan and draft curing amendments to the Town's [] Ordinance to insure that the [] Ordinance is not unconstitutionally exclusionary.

*Id.*

## Subsequent Background

On December 21, 2018, BIV filed separate appeals with the trial court challenging both of Town Council's Resolutions. R.R. at 5a-15a, 26a-36a. BIV asserted that Town Council admitted in its Resolutions that the Ordinance was exclusionary because homeless shelter and transitional living facility uses were not

10

specifically permitted in any of the Town's zoning districts. *Id.* As such, BIV argued that Town Council had no basis for finding BIV's curative amendments unacceptable or for failing to allow BIV to conduct the proposed uses on its properties. *Id.* The trial court consolidated the matters under one docket number and did not take any additional evidence.[6]

On May 22, 2019, during the pendency of the consolidated appeal in the trial court, Town Council adopted Ordinance numbers 993 and 995, thereby amending certain sections of the Ordinance with respect to the specific uses of homeless shelter and "halfway house for persons on parole or probation." Town's Br., App. B at 1. While the amended Ordinance would allow homeless shelters as a special exception use within the BC Zoning District, where BIV proposes to develop its 48-bed homeless shelter, the amended Ordinance limits homeless shelters in the Town to a maximum of 20 beds. Town's Br., App. A at 2. The amended Ordinance further allows for a halfway house for persons on parole or probation as a special exception use only in the Town's High Density Residential (H-D) Zoning District, and not within the BC or I-P Zoning Districts, and restricts such halfway houses to a maximum of five residents. Town's Br., App. B at 1-2. Given the restrictions imposed by the amended Ordinance, BIV maintains it would not be permitted to operate its proposed transitional living center at the Railroad Street Property or its proposed homeless shelter at the West Sixth Street Property. BIV's Br. at 6.

---

[6] BIV's initial appeal, docketed in the trial court at No. 2018-CV-1579, challenged Town Council's decision in Resolution 11-27-18.02 regarding the transitional living facility. R.R. at 1a-2a, 6a-25a. BIV's second appeal, docketed in the trial court at No. 2018-CV-1580, challenged Town Council's decision in Resolution 11-27-18.01 pertaining to the homeless shelter. R.R. at 3a-4a, 26a-45a.

11

On June 18, 2019, the trial court issued an opinion[7] and order agreeing with Town Council that both homeless shelters and transitional living facilities may be allowed as accessory uses or continuum of care uses in the Town's HE-C Zoning District. The trial court held that because homeless shelter and transitional living facility uses are not totally excluded from the Ordinance it is not *de jure* exclusionary. The trial court thus denied BIV's curative amendment and sustained Town Council's finding that the Ordinance is not *de jure* exclusionary. BIV then appealed to this Court.

Where the trial court takes no additional evidence, "our scope of review is limited to determining whether [Town Council] committed an error of law or manifestly abused its discretion." *Diversified Health Assocs., Inc. v. Zoning Hearing Bd. of Borough of Norristown*, 781 A.2d 244, 246-47 (Pa. Cmwlth. 2001) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983)). Town Council is the factfinder, and a conclusion that it abused its discretion may only be reached if its findings are not supported by substantial evidence. *Diversified Health*, 781 A.2d at 247 (citation omitted). Moreover, whether a proposed use, as described in BIV's application and through testimony, falls within a given zoning classification is a question of law fully subject to this Court's review. *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

---

[7] We note that the trial court opinion's first two paragraphs under the heading "Background and Procedural Posture," while referring to the correct parties, erroneously references a different property and a zoning permit application rather than a curative amendment challenge. Trial Court Opinion at 1-2. Despite BIV's argument to the contrary, *see* BIV's Br. at 9, this is not reversible error. The trial court clearly committed a typographical rather than an analytical error as the remainder of the opinion discusses Town Council's resolutions denying BIV's proposed curative amendments regarding transitional living facility and homeless shelter uses, Trial Court Opinion at 2; lists BIV's arguments pertaining to these uses, *id.* at 3; and then specifically analyzes the Ordinance with respect to these uses, *id.* at 4-5.

## Substantive Validity Challenges

Zoning ordinances that exclude uses are categorized as either *de jure* or *de facto* exclusionary. *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 571 (Pa. Cmwlth. 2014). In a *de jure* exclusion case, "the challenger alleges that an ordinance on its face totally excludes a use." *Id.* at 571-72 (quoting *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009)). In contrast, the challenger in a *de facto* exclusion case "alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished." *MarkWest*, 102 A.3d at 572 (quoting *Twp. of Exeter*, 962 A.2d at 659).

Here, BIV alleges *de jure* exclusions.[8] As this Court has explained:

> The fact that a zoning ordinance does not contain a specific provision addressing a proposed use is not, in and of itself, a basis for finding an unconstitutional exclusion of that use. *Caln* [*Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*], 840 A.2d [484,] 491 [(Pa. Cmwlth. 2004)]. Where an ordinance does not mention a specific use, we must determine whether the proposed use is included within another use that has been specifically

---

[8] BIV argues in its brief before this Court that the Ordinance is both *de jure* and *de facto* exclusionary. BIV did not make an argument before the trial court or in its brief before this Court as to how the Ordinance was *de facto* exclusionary *prior* to the curative amendments that were enacted *after* the substantive validity challenges were raised. *See* Appeal Petitions to Trial Court, R.R. at 5a-15a, 26a-36a (raising only *de jure* exclusions). *See also* Pa.R.A.P. 302(a); *Kuziak v. Borough of Danville*, 125 A.3d 470, 478-79 (Pa. 2015) (refusing to hear constitutional claims regarding ordinance because landowner failed to raise them, or present any evidence in support of his arguments, before the board or on appeal to the trial court). BIV does argue in its brief before this Court that even after the Town's enactment of Ordinance No. 995, providing for transitional living facilities in the H-D Zoning District, the Town's Zoning Ordinance was *de facto* exclusionary because the restrictions and conditions placed upon the use by Ordinance No. 995 "effectively prohibit" the use. This argument is of no moment as we are required to examine the Ordinance as it existed at the time that the substantive validity challenge was brought. *See* discussion, *infra* p. 15.

13

provided for. *Id.* When a proposed use can be considered within another zoning classification or, where a zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion. *Id.*

*Atiyeh v. Bd. of Comm'rs of Twp. of Bethlehem*, 41 A.3d 232, 236 (Pa. Cmwlth. 2012). In addition, we note that a party challenging the lawfulness of an ordinance bears a heavy burden as an ordinance is presumptively valid and constitutional. *Id.* at 235. Moreover, "where an ordinance does not mention a specific intended use, we must determine whether a reasonable interpretation of the ordinance reveals another zoning classification in which that particular use may be allowed." *Ficco v. Bd. of Supervisors*, 677 A.2d 897, 899 (Pa. Cmwlth. 1996).[9]

When interpreting the meaning of a zoning ordinance, we are guided by the principles of statutory construction with the primary objective of determining the intent of the legislative body that enacted the ordinance. *THW Grp.*, 86 A.3d at 336. Undefined terms in an ordinance are to be given their common, everyday meaning, and courts may consult sources such as the dictionary, statutes, or regulations for assistance. *See Atiyeh*, 41 A.3d at 236; *Diversified Health*, 781 A.2d at 246-47. "However, enactment of a specific definition in the ordinance produces a different effect because the legislative body may furnish its own definitions of words or phrases in order to guide and direct judicial determinations . . . ."

---

[9] This Court acknowledges BIV's argument that the trial court erred in finding BIV's proposed curative amendments were properly rejected by Town Council because they were inconsistent or incompatible with the Town's comprehensive plan. BIV's Br. at 10. The fact that a transitional living facility use and homeless shelter use may conflict with the Town's Comprehensive Plan is not determinative. *See* Section 303(c) of the MPC, 53 P.S. § 10303(c) ("[N]o action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such action is inconsistent with, or fails to comply with, the provision of a comprehensive plan.").

14

*Diversified Health*, 781 A.2d at 247 (citation omitted). Section 603.1 of the MPC provides as follows:

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1. Moreover, "[i]n determining whether an ordinance creates a *de jure* exclusion, '[u]ncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional.'" *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285, 288 (Pa. Cmwlth. 2000) (quoting *Upper Salford Twp. v. Collins*, 669 A.2d 335, 336 (Pa. 1995)). *See also Caln*, 840 A.2d at 491 (stating "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land").

## Analysis

As mentioned earlier, Town Council adopted Ordinance numbers 993 and 995 while BIV's consolidated appeal of the denial of its curative amendment challenges were pending with the trial court. Town Council's purported curative amendments to the Ordinance define homeless shelter and halfway house uses and allow the uses in some of the Town's zoning districts. The Town mentions these after-enacted amendments to the Ordinance in its brief to the Court, and attaches them thereto, implying that it has cured any exclusion or defect through these amendments. Nevertheless, we are bound to review the Ordinance as it was when

15

BIV submitted its challenges to Town Council. As our Supreme Court has explained:

> "[W]e cannot allow a municipality to thwart a valid challenge to its zoning ordinance by adopting a curative provision, which was not considered or advertised prior to the time of the challenger's application." [*Casey v. Zoning Hearing Bd. of Warwick Twp.*, 328 A.2d 464,] 469 [(Pa. 1974)]. The reason for the *Casey* rule is simple: it would be inequitable to "penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional infirmity, but also designed to zone around the challenger." *Id.* at 468.

*Piper Grp., Inc. v. Bedminster Twp. Bd. of Supervisors*, 30 A.3d 1083, 1094 (Pa. 2011).

It is undisputed that at the time BIV submitted its substantive validity challenges, the Ordinance failed to specifically list either transitional living facility or homeless shelter as a permitted use in any of the Town's zoning districts. *See* R.R. at 228a-56a. Town Council admits as much in its Resolutions. *See* R.R. at 21a-22a, 42a (stating the proposed uses are not specifically permitted in any of the Town's 13 zoning districts as primary uses). Given this premise, for the Ordinance not to be *de jure* exclusionary, BIV's proposed uses "must be encompassed within another use that is *specifically provided for* in the Ordinance." *Atiyeh*, 41 A.3d at 237 (citing *Kratzer v. Bd. of Supervisors of Fermanagh Twp., Juniata Cty.*, 611 A.2d 809, 812 (Pa. Cmwlth. 1992)) (emphasis added). Town Council found, and the trial court agreed, that a transitional living facility and a homeless shelter "may be permitted, in a limited manner, as an 'accessory use' or 'continuum of care' use[10]

---

[10] While Town Council's Resolutions refer to an "accessory use" *or* "continuum of care" use, the Town only argues that the proposed uses are accessory *as* "continuum of care" uses.

16

in the HE-C [Healthcare Zoning] District." R.R. at 22a, 42a; Trial Court's Opinion, dated 6/18/19 at 5. We disagree.

The Ordinance defines an accessory use as "[a] use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building." Ordinance § 27-302, R.R. at 204a. The Ordinance further specifies that "[u]ses and buildings customarily incidental to any permitted uses" in the HE-C Zoning District are also allowed. Ordinance § 27-512, R.R. at 248a. The HE-C Zoning District "limits permitted uses to those which are accessory, subordinate and supportive to hospital facilities and services." Ordinance § 27-512, R.R. at 247a.

BIV argues that Town Council erred in finding that a transitional living facility use and a homeless shelter use may be allowed as an "accessory use" or "continuum of care" use in the Town's HE-C Zoning District. The Town contends that both types of uses qualify as a "continuum of care" use and that a "continuum of care" use is accessory to a hospital use in the HE-C Zoning District.[11]

---

Town's Br. at 10-13. We note that no argument is made that the proposed uses are any other type of use "specifically provided for in the Ordinance" other than a "continuum of care" use. *Atiyeh*, 41 A.3d at 237 (citing *Kratzer*, 611 A.2d at 812).

[11] At the time BIV's substantive validity challenges were submitted, the following uses were permitted in the Town's HE-C Zoning District: single-family dwelling; community living facilities; administrative offices related to hospital functions to include, but not limited to, business office, data processing and medical records; daycare facilities; medical offices;  hospitals, including outpatient facilities; outpatient medical testing lab; medical and dental clinic; educational and conference facilities for in-house health care training; automobile parking lots and parking garages affiliated with a hospital; parks and recreational facilities; retail sales related to health care products; eating establishments incidental to and located within the hospital; minor banking and ATM services incidental to and located within a hospital; service establishments incidental to and located within a hospital; continuing-care retirement community; and *uses and buildings customarily incidental to any permitted uses*. R.R. at 247a-48a. The Ordinance further provided that heliports, emergency vehicle facilities, nursing homes, and hospital-related dormitories were allowed as special exception uses. R.R. at 248a.

17

The Ordinance defines the term "continuum of care" as follows:

> [t]he entire spectrum of specialized health, rehabilitative, and residential services available to the *frail and chronically ill*. The services focus on the social, residential, rehabilitative, and supportive needs of individuals as well as needs that are essentially medical in nature.

Ordinance § 27-302 (emphasis added), R.R. at 210a. Despite being a term defined in the Ordinance, "continuum of care" is not listed as a permitted, special exception, or conditional use in the HE-C Zoning District or *any* of the Town's zoning districts, as admitted by the Town. Town's Brief at 11-12. Acknowledging its absence as a specified permitted use in the Ordinance, the Town argues that the continuum of care use is accessory to a hospital use in the HE-C Zoning District. *Id.* A hospital is defined in the Ordinance as "[a] place for diagnosis, treatment or other care of humans on an around the clock basis, having facilities used primarily for inpatient medical and surgical care and for the treatment of sick and disabled persons." Ordinance § 27-302, R.R. at 215a. An examination of these two definitions reveals that a use which provides supportive care to the "frail and chronically ill" could be incidental to a hospital's provision of "treatment or other care of humans." *See* Ordinance § 27-302, R.R. at 210a, 215a. Stated differently, the broad definition of "continuum of care" to include the "entire spectrum" of supportive services for the frail and chronically ill makes such a use accessory or incidental to a hospital use.

We now examine whether a transitional living facility or homeless shelter fits within the definition of "continuum of care" use. BIV defines a "transitional living facility" as:

18

> A place that includes housing or lodging and meals and which provides a safe structured, supervised and supportive drug and alcohol-free environment, that may include peer support, employment counseling, job placement, financial management assistance, and other programs and services to individuals making the transition from controlled group quarters living to one of independent or semi-independent living in ordinary society; *including but not limited to incarcerated individuals,* individuals being released from drug and alcohol addiction treatment programs and/or individuals having undergone psychiatric treatment and being declared mentally competent and ready to resume life in ordinary society.

R.R. at 20a (emphasis added). The Town argues that those individuals who are provided for in the definition of transitional living facility "could be" frail or chronically ill, qualifying the use as a continuum of care. Town's Br. at 12. We disagree.

While some of the individuals served by the transitional living facility use may, in fact, be chronically ill *or* frail, neither the Town nor the trial court offers any explanation or justification in the record to support the position that a use that provides housing and meals to incarcerated individuals qualifies as one providing services for the "frail and chronically ill." *See* R.R. at 20a. Mr. Zoppetti testified that the transitional living facility may include community corrections facilities run by the Department of Corrections, R.R. at 71a-72a, and residential re-entry or halfway houses under the Federal Bureau of Prisons, R.R. at 72a-73a. Mr. Zoppetti further explained that when he was referring to a transitional living facility, he defined that as a use that did not provide formal treatment or counseling/psychotherapy at the facility. 28 Pa. Code § 701.1; R.R. at 70a. There is nothing in the record that would support a conclusion that correctional or post-

19

prison re-entry facilities are for the "frail and chronically ill." As such, a transitional living facility use is not a continuum of care use and is not, therefore, an accessory use to a hospital in the HE-C Zoning District.

Similarly, the definition of a "continuum of care" use is not broad enough to include the proposed homeless shelter use. BIV defines "homeless shelter" as:

> A building set up to provide for the needs of homeless people; including but not limited to shelter, counseling, drug and alcohol recovery programs, food, sanitation or other forms of support.

R.R. at 41a. Here, Mr. Zoppetti testified there was a range of services BIV intended to provide as part of the proposed homeless shelter, including:

> job skills, job readiness skills, household budgeting management, parenting skills, those suffering with mental health or addiction support, other necessities, hot meals, clothing, laundry, internet, voice mail. So it's a continuum of services to securing their journey to wellness and self-sufficiency and, hopefully, taxpayers as the end result.

R.R. at 139a-40a. While some of the individuals served by the homeless shelter may be frail and chronically ill, neither the Town nor the trial court offers any explanation or justification in the record to support the position that a use that provides housing and meals to homeless individuals qualifies as one providing services for the "frail and chronically ill." *See* R.R. at 20a. As such, a homeless shelter is not a "continuum of care" use and is not, therefore, an accessory use to a hospital in the HE-C Zoning District.

20

Once it is determined that the Ordinance excludes a legitimate use, the burden shifts to the municipality to establish that the exclusion is substantially related to the promotion of public health, safety, and welfare. *Atiyeh*, 41 A.3d at 237 (citing *Cty. of Beaver v. Borough of Beaver Zoning Hearing Bd.*, 656 A.2d 157, 159 (Pa. Cmwlth. 1995)).[12] The municipality must do so through the presentation of evidence to support the exclusion. In a case of first impression, *Beaver Gasoline Co. v. Zoning Hearing Board of the Borough of Osborne*, 285 A.2d 501 (Pa. 1971), our Supreme Court held:

> [I]n those circumstances where a total municipality-wide prohibition of an activity which, on its face, does not give rise to an indication of the protection of a legitimate public interest controllable by zoning laws, the applicant has met his burden by showing the total prohibition and the municipality must then establish the legitimacy of the prohibition by evidence establishing what public interest is sought to be protected.

*Id.* at 504. In 2012, this Court found that where the municipality failed to provide "justification" to "support an exclusion" of a legitimate use, and provided no evidence that the use would be injurious to the health, safety, morals or general welfare, we must conclude that the ordinance is *de jure* exclusionary. *Atiyeh*, 41 A.3d at 237. This Court has also held that a municipality did not meet its burden when it failed to present any evidence that the proposed use could pose a threat to the public health, safety, and welfare. *See Wimer Realty, LLC v. Twp. of Wilmington*,

---

[12] Notably, our courts have held that a zoning ordinance that totally excludes a legitimate use must be highly scrutinized and must bear a more substantial relationship to a stated public purpose than an ordinance that merely restricts a use to a certain zoning district. *See, e.g., Adams Outdoor Advert., Ltd. v. Hanover Twp. Zoning Hearing Bd.*, 633 A.2d 240, 245 (Pa. Cmwlth. 1993) (citing *In re Appeal of Elocin, Inc.*, 461 A.2d 771 (Pa. 1983)).

206 A.3d 627, 642 (Pa. Cmwlth. 2019); *Adams Outdoor Advert., Ltd. v. Hanover Twp. Zoning Hearing Bd.*, 633 A.2d 240, 245 (Pa. Cmwlth. 1993).

As was the case in *Atiyeh*, *Wimer Realty*, and *Adams Outdoor Advertising*, here Town Council did not advance any justification to support the exclusion of a transitional living facility or homeless shelter use, let alone any reason related to the promotion of public health, safety, and welfare. *See Wimer Realty*, 206 A.3d at 641-42; *Atiyeh*, 41 A.3d at 237; *Adams Outdoor Advert.*, 633 A.2d at 245. It failed to call any witnesses or present any evidence to establish the legitimacy of the Ordinance's prohibition.[13] Several concerned citizens were permitted to voice their objections to the proposed amendments but were not permitted by Town Council to question BIV's witnesses. R.R. at 152a. Because there is no provision in the Ordinance for a transitional living facility or a homeless shelter, and because Town Council failed to justify such exclusions, we conclude that the Ordinance is *de jure* exclusionary as to those uses. *See Wimer Realty*, 206 A.3d at 644; *Atiyeh*, 41 A.3d at 237; *Cty. of Beaver*, 656 A.2d at 159.

Finally, given the above determinations, we turn to the issue of relief. BIV argues that as the successful landowner, it is entitled to site-specific relief permitting it to develop the properties in accordance with the submitted concept plans and subject to compliance with other municipal ordinances. BIV's Br. at 18. We agree in part. As our Supreme Court has noted, a landowner that takes the time and effort to file a valid challenge to an ordinance "is entitled to 'definitive relief' so long as the challenger complies with other reasonable extant zoning restrictions." *Piper Grp.*, 30 A.3d at 1094-95. Our courts have further elaborated as follows:

---

[13] Notably, the Town did not request that the trial court take additional evidence as permitted by Section 1005-A of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A.

22

a ruling that a zoning ordinance totally excludes a legitimate use is not to be enforced prospectively but must apply to the party who [sic] successfully litigated that ordinance's invalidity. As the Pennsylvania Supreme Court stated in *H.R. Miller Co*[.] *v. B*[*d.*] *of Supervisors*, [] 605 A.2d 321, 324-25 ([Pa.] 1992), 'where the cause of an ordinance's invalidity is a *de jure* exclusion of a legitimate use, as in *Casey*, . . . the sole remedy is to allow the use somewhere in the municipality, and equity dictates that this opportunity fall to the successful litigant/landowner.' [*Cty. of Beaver*,] 656 A.2d at 160.

*Atiyeh*, 41 A.3d at 238.

Here, BIV established that the Ordinance unconstitutionally excludes two legitimate land uses, a transitional living facility and a homeless shelter. As such, we find that Town Council erred in failing to grant BIV site-specific relief, subject to compliance with other applicable ordinances in effect on the date of the original curative amendment applications. *See Atiyeh*, 41 A.3d at 238. Particularly important here is the requirement that BIV's site-specific relief must comply with other applicable zoning restrictions. BIV seeks a curative amendment for a transitional living facility (Railroad Street Property) and a homeless shelter (West Sixth Street Property). The West Sixth Street Property is entirely in the BC Zoning District and the proposed curative amendment to the Ordinance permitted the homeless shelter in the BC Zoning District, curing the exclusion of this use, subject to applicable zoning restrictions.

However, the Railroad Street Property is partly in the IP Zoning District and partly in the BC Zoning District, and the 40,000-square-foot building proposed to be used as a transitional living facility straddles these two zoning districts. As this Court has previously noted, in cases involving split-zoned property, the landowner applicant must seek the necessary variance to apply one zoning district's

23

regulations to the entire property. *See, e.g., LHT Assocs., LLC v. Twp. of Hampton*, 809 A.2d 1072, 1077 (Pa. Cmwlth. 2002) (noting it is permissible to refuse to allow a landowner to use residential portion of split-zoned property as a parking lot absent a variance). In this case, even if the transitional living facility was treated as permitted in the BC Zoning District, as requested by BIV, it is not permitted in the IP Zoning District. Therefore, BIV would need a use variance to allow the transitional living facility on the split-zoned Railroad Street Property. There is no evidence in the record that BIV sought such a use variance.

Interestingly, instead of requesting the necessary use variance, BIV proposed, as part of its curative amendment, to add Section 27-407 to the Ordinance, a provision which would apply to *all* existing split-zoned buildings located in *all* of the Town's zoning districts. R.R. at 20a. Specifically, the proposed Section 27-407 provides:

> Where an existing building is placed in more than one zoning district, the owner of such building may utilize it for any of the uses permitted in all such districts, regardless [of] whether the use is primarily in one district or another.

R.R. at 20a. Importantly, Town Council cannot provide relief beyond that which is necessary to cure the defect. *See Piper Grp.*, 30 A.3d at 1097 (landowner's proposed "remedy need not be automatically provided, because it would provide a windfall beyond what is necessary to cure the constitutional defects"); *Cook v. Riegelsville Borough Council* (Pa. Cmwlth., No. 322 C.D. 2015, filed May 6, 2016), slip op. at 9 ("while the governing body must cure the defect, it need not provide *carte blanche* development rights"). The amendment BIV proposed—giving any applicant throughout the Town the ability to choose a permitted use in either zoning district

24

for a building that straddles two zoning districts—is beyond that which is necessary to cure the defect as alleged. The defect BIV sought to cure was that a transitional living facility was not a permitted use in any one zoning district in the Town, not that it was not permitted in a building that straddled two zoning districts. Therefore, the portion of BIV's curative amendment that proposes to add Section 27-407 to the Ordinance does not appropriately cure the exclusionary defect, but rather goes beyond the relief necessary for such a cure.

Accordingly, we reverse and remand for further proceedings pertaining to BIV's site-specific relief consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bloomsburg Industrial Ventures, LLC,   :
              Appellant   :
                           :
         v.                 :
                           :   No. 961 C.D. 2019
Town of Bloomsburg          :

## O R D E R

AND NOW, this 5th day of November, 2020, the order of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch (trial court) in the above-captioned matter is REVERSED. This matter is REMANDED to the trial court for further remand to the Town Council of Bloomsburg for further proceedings.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge